IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ANTHONY BURTON, #136983, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  2:03cv1244-ID |
| | ) | (WO) |
| RICHARD ALLEN, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, plaintiff Anthony Burton (Burton), a prison inmate, alleges that a number of correctional officers conspired against him in retaliation for exposing prison conditions to Reverend Jesse Jackson and other public figures, and then assaulted him at the Ventress Correctional Facility.  Burton names as defendants Alabama Department of Corrections Commissioner Richard Allen,[1] Warden J.G. Giles,[2] Warden Willie Thomas,[3] correctional officers Sherwin Carter, Alex Moses, Cynthia Wheeler, Thomas Roan, Gloria Wheeler, T.D. Jones, J.G. Burnham, P.R. Fenn, C.L. Baker, L.H. McDonald and Willie Burks, III.  The plaintiff seeks compensatory and punitive damages, injunctive relief and demands trial by jury.

The court has jurisdiction pursuant to 28 U.S.C. § 1331 and 1343(a)(3).  In response

---

[1]  The plaintiff originally named Commissioner Donal Campbell as a defendant.  Commissioner Campbell has since been replaced by Commissioner Richard Allen.

[2]  Giles is the Warden at Ventress Correctional Facility.

[3]  Thomas is the Warden at Staton Correctional Facility.

to the orders of the court, the defendants filed a special report, as supplemented, and an answer. The court then informed the plaintiff that the defendants' special report as supplemented, may, at any time, be treated as a motion for summary judgment, and the court explained to the plaintiff the proper manner in which to respond to a motion for summary judgment. The plaintiff filed responses to the defendants' special report, as supplemented. Upon consideration of the motion, the plaintiff's responses and the supporting and opposing evidentiary material, the court concludes that the defendants' motion for summary judgment is due to be granted in part and denied in part.

## SUMMARY JUDGMENT STANDARD

To survive the defendants' properly supported motion for summary judgment, the plaintiff is required to produce some evidence to support his constitutional claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). He must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. A plaintiff's mere verification of conclusory allegations is not sufficient to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" summary judgment is due to be granted in favor of the moving party. *Celotex,* 477 U.S. at 322; *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all of the materials before the court indicate that there

2

is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex,* 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to a liberal interpretation by the courts, a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a material fact in order to avert summary judgment. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

## DISCUSSION

### A.  FACTS[4]

On March 8, 2003, plaintiff Burton was the "Master of Order" for a program/presentation at Staton Correctional Facility.  Guests at this program included Reverend Jesse Jackson, State Representative Johnny Ford, and radio talk show host Roberta Franklin.  During the program, Burton spoke about the Alabama prison system's "poor, inhumane, and deplorable conditions."

On March 10, 2003, Warden Thomas called Burton into his office and expressed his displeasure with Burton's remarks.  On April 2, 2003, classification specialist V. Ollison documented a need for a Warden to Warden inmate swap between Ventress and Staton.

---

[4]  The court construes the facts in a light most favorable to the non-movant, the plaintiff in this case. *See, e.g. Brown v. Crawford*, 906 F.2d 667 (11th Cir. 1990).  Thus, the facts as set forth by this court may not be the actual facts, and a trier of fact remains free to decide what are the true facts.

3

Burton was selected to transfer because placement at Ventress would put him "closer to home." (Pl's Objection to Defs' Mot. for Summ. J., ex. 1, doc. # 88). On April 3, 2003, Burton was transferred to Ventress from Staton.

On April 30, 2003, Burton was awaken at approximately 12:45 a.m. by correctional officer Brown.[5] Defendant Cynthia Wheeler, defendant Moses, and four other officers were present during this incident. The defendants were verbally abusive to him until defendant Moses struck Burton twice in the stomach with his baton.[6]

On May 7, 2003, Burton wrote a letter to then Commissioner Campbell complaining about the April 30 incident. Burton sent copies of his letter to several people including Representative Ford, Reverend Jackson, Barbour County District Attorney Boyd Whigham, and the Alabama Department of Corrections internal investigation division.

On May 20, 2003, Burton complained to Warden Giles about the April 30 incident. On May 21, 2003, Whigham sent a letter to the internal investigation division of the Department of Corrections, asking them to review Burton's letter "to determine if any crime was committed." (Amended Compl., ex. C, doc. # 17).

On June 11, 2003, Burton spoke to Commissioner Campbell about the April 30 incident.

---

[5] Brown is not a named defendant in this action.

[6] The defendants assert that they were conducting a dormitory inspection, including Burton's living area, and deny that any abusive language was directed at Burton. In addition, Moses denies striking Burton with his baton.

What happened next on June 20, 2003, is also hotly disputed.  The plaintiff alleges that during the dinner dining period, he was late arriving in the dining hall.  As soon as he got his food tray, correctional officers shouted that the inmates had only two minutes to eat. Burton asserts that he immediately got up from the table and walked to the disposal line. While on his way to the disposal line, Burton said to defendant Gloria Wheeler that "there was nothing in the rules that states we only have two (2) minutes to eat.  I stated that we have the right to . . . ample time to eat our food."  (Compl. at 5, ¶ 14).  At that point, according to Burton, defendant Wheeler stated that he had no rights, "snatched [his] food tray from [his] hand, and pulled [him] out of line by grabbing hold of [his] shirt."  (*Id*.)  Defendants Jones and Burnham then refused to allow him to leave the dining room but defendant Wheeler made all other inmates leave.  After the dining room was cleared, Burton was surrounded and attacked by defendants Wheeler, Jones, Burnham, Fenn, Baker, Burks, and McDonald.  Burton alleges that Burnham bumped and pushed him, Wheeler struck him in the face with her hand, Jones struck him in the face and Burnham struck him in the back and knocked him on a table.  According to Burton, once he was on the table he was brutally attacked, kicked and punched at least 30 to 40 times, by all the defendants.  Burnham subsequently stopped the attack but on the way to the health care unit, although he was handcuffed, Burnham pushed Burton's face into the concrete wall several times.

The defendants, on the other hand, admit that they used force on Burton but contend that the amount of force used was reasonable under the circumstances.  According to the

defendants, on June 20, 2003, while Wheeler was the "chow hall rover," she ordered Burton to leave the dining hall because he had "had adequate time to have finished eating." (Defs' Special Rept, Aff. Wheeler, doc. # 9). Burton refused to comply with the direct order, saying instead in a derogatory manner, "you can't make me leave the kitchen, I can take as long as I want to eat." (*Id*.). In response, Wheeler instructed Burton to place his hands behind his back to be handcuffed. Wheeler placed her right hand on Burton's shoulder to attempt to handcuff him. Burton "snatched away" from Wheeler. Burnham and T.D. Jones[7] assisted Wheeler in restraining Burton by leaning him over the table while placing handcuffs on him. According to Jones, Wheeler gave Burton a direct order to be quiet but Burton refused. During their exchange, Burton raised his hand in a threatening manner. Jones then grabbed Burton and Burnham assisted her in restraining him. Burnham and Burks admit holding Burton on the table while Fenn placed him in handcuffs. McDonald and Baker contend that they simply watched as Fenn and Burnham gained control over Burton and placed him in handcuffs. Burnham, Baker and Fenn then escorted Burton to the health care unit.

As a result of the altercation in the dining hall, on June 25, 2003, Burton was subjected to disciplinary action for failing to obey a direct order. Defendant Carter presided over the due process hearing at which Burton was permitted to present, question and cross-examine witnesses. Burton was found guilty of the infraction and Carter recommended 45

---

[7] Defendant Tacoma Jones Moses is identified in the plaintiff's pleadings as T.D. Jones. She has married since this lawsuit was filed. However, for simplicity's sake, the court will continue to refer to this defendant as T.D. Jones or defendant Jones.

days in segregation and a review of his classification.

## B. RETALIATION CLAIM

The plaintiff contends that he was transferred to Ventress Correctional Facility in retaliation for exposing poor conditions of confinement to the Reverend Jesse Jackson and other prominent people while at Staton Correctional Facility.[8]  The method of establishing a retaliation claim is essentially the same as for a claim of race or sex discrimination. *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 600-01 (11th Cir. 1986).  An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by a preponderance of the evidence, which once established raises a presumption that the prison official retaliated against the inmate.  *Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248 (1981).  To

---

[8]  Burton alleges that the defendants conspired to retaliate against him.  Although not a model of clarity, it appears that Burton is arguing that Wardens Giles and Thomas conspired to transfer him.  The defendants argue that the intra-corporate conspiracy doctrine applies to any alleged conspiracy by these defendants.  The court pretermits discussion of the applicability of the intra-corporate conspiracy doctrine because the court concludes that the plaintiff is entitled to no relief on any alleged conspiracy claim.  First, in his complaint, Burton alleges only a retaliation claim.  Next, even assuming that the plaintiff has properly alleged a conspiracy claim, his conclusory assertion that his transfer was part of general scheme of conspiracy to retaliate is insufficient to support a claim under § 1983.  *See Adams v. Rice*, 40 F.3d 72, 74-75 (4th Cir. 1994);  *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2nd Cir.1987) ("allegations which are nothing more than broad, simple, conclusory statements are insufficient to state a claim under § 1983"); *see also Phillips v. Mashburn,* 746 F.2d 782, 785 (11th Cir.1984) (naked assertions  of a conspiracy are insufficient to state a claim under § 1983).  Consequently, defendant Thomas' motion for summary judgment is due to be granted on this basis.

The plaintiff also contends that he was retaliated against by defendant Carter when he ruled against him in a prison disciplinary proceeding.  Burton relies on his own conclusory allegation that Carter's action must have been retaliatory but presents the court with no evidence to support his claim.  Consequently, he is entitled to no relief on this basis.  To the extent that Burton alleges that he challenges that hearing procedure, he has failed to state a claim upon which relief can be granted.  As a consequence of the disciplinary proceeding, Burton received 45 days in segregation and was referred to classification for an increase in custody status.  These punishments are not "atypical and significant hardship. . .in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995).  Thus, the Due Process clause is not implicated by any procedures used during the disciplinary procedure.  The court concludes that defendant Carter's motion for summary judgment is also due to be granted.

establish a prima facie case, an inmate must show that he was engaged in protected activity; that he suffered adverse treatment simultaneously with or subsequent to such activity; and that there was a causal link between the protected activity and the adverse treatment. *Donnellon*, 794 F.2d at 600-01. If an inmate establishes a prima facie case, the burden then shifts to prison officials to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the prison official retaliated against the inmate. This may be done by the prison official articulating a legitimate, non-retaliatory reason for the adverse decision or action, which is clear, reasonably specific and worthy of credence. The prison official has a burden of production, not of persuasion, and thus does not have to persuade a court that he or she actually was motivated by the reason advanced. *Burdine, supra*. Once the prison official satisfies this burden of production, the inmate then has the burden of persuading the court that the proffered reason for the adverse decision is a pretext for retaliation. An inmate may satisfy this burden by persuading the court either directly that a retaliatory reason more than likely motivated the prison official or indirectly that the proffered reason for the adverse decision is not worthy of belief. By so persuading the court, the inmate satisfies his ultimate burden of demonstrating by a preponderance of the evidence that he has been the victim of unlawful retaliation. *Burdine, supra*.

To the extent Burton claims that the defendants retaliated against him for "speaking out" on prison conditions, he has overcome his burden of establishing that he was engaged in a protected activity. In a case such as this one, the "gist of a retaliation claim is that a

prisoner is penalized for exercising the right of free speech." *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir.1989). *See Donnellon*, 794 F.2d at 600-01. However, the defendants have articulated a non-retaliatory reason for Burton's transfer from Staton to Ventress: the need for an inmate swap between Ventress and Staton. Selecting Burton because he would be closer to home is a legitimate, nondiscriminatory reason. Thus, the burden is upon Burton to come forward with evidence from which a trier of fact could reasonably conclude that a retaliatory reason is the more likely motivation or that the proffered reasons are not worthy of belief.

Burton has responded with only his mere conclusory allegation that the defendants' reason was pretextual.[9] Burton cannot demonstrate that the defendants' reason for his transfer was pretextual. In fact, Burton's own exhibit documents Ventress' need for an inmate swap and explains that Burton's selection as the inmate to transfer was because the transfer would move him closer to home. (Pl's Objection to Defs' Mot. for Summ. J., ex. 1, doc. # 88). Consequently, Burton cannot establish that the reason which the defendants articulated for transferring him was pretext for retaliation. The defendants are entitled to summary judgment on this claim because there is no evidence from which a reasonable jury could conclude that Burton's transfer to Ventress was retaliatory. Accordingly, the court concludes that Burton has failed to establish a prima facie case of retaliation and this claim fails.

---

[9] It is patent that Burton believes that he is protected absolutely from the consequences of his speech, but, of course that is not true, especially in the prison setting. *See e.g. Turner v. Safley*, 482 U.S. 78 (1987).

### C.  EXCESSIVE FORCE CLAIMS

The use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the inmate does not suffer serious injury.  *Hudson v. McMillian*, 503 U.S. 1 (1992).  Whenever prison officials stand accused of using excessive physical force constituting "the unnecessary and wanton infliction of pain" violative of the Cruel and Unusual Punishments Clause, the core judicial inquiry set out in *Whitley v. Albers*, 475 U.S. 312, 320-321(1986) applies; specifically, whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.  Thus, summary applications of force are constitutionally permissible when prison security and order, or the safety of other inmates or officers, have been placed in jeopardy.  *Whitley,* 475 U.S. at 312 (riot and hostage situation); *Ort v. White*, 813 F.2d 318 (11th Cir. 1987) ( Inmate denied water for refusing to carry water container while on work detail).  To establish an Eighth Amendment claim for excessive force, a plaintiff must prove that "force was applied . . . maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-21 (*quoting Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)).  *See also Hudson,* 503 U.S. at 6-7.

### A.  Defendants Cynthia Wheeler and Alex Moses – April 30, 2003 incident.

Burton contends that on April 30, 2003, defendant Wheeler was verbally abusive to him and defendant Moses struck Burton twice in the stomach with his baton for no reason.  The defendants deny that they used any abusive language. Critically, Burton does not allege that

defendant Cynthia Wheeler used any force against him.  Consequently, he has failed to state a claim against Cynthia Wheeler, *see McFadden v. Lucas*, 713 F.3d 143, 146 (5th Cir. 1983), and her motion for summary judgment is due to be granted.

However, Moses denies striking Burton with his baton.  Moses' denial of Burton's claim creates a genuine issues of fact which precludes summary judgment.  Moreover, the disputed issues of fact preclude consideration, at this juncture, of the defendant's claim of qualified immunity.  If the facts are as Burton alleges in his complaint, Moses would not be entitled to immunity because any correctional officer would know that the law was clearly established that force may not be used against inmates without reason.  Defendant Moses' motion for summary judgment is due to be denied.

**B.  Defendants Wheeler, Jones, Burnham, Fenn, Baker, Burks, and McDonald - June 20, 2003 incident**.  According to Burton, these defendants brutally attacked him, kicking and punching between 30 and 40 times.  All the defendants admit being present during the incident but each defendant contends either the amount of force he/she used was reasonable or he/she denies using any force at all against Burton.  Suffice it to say, the defendants' denials of Burton's claim create genuine issues of fact which preclude summary judgment.  Furthermore, the disputed issues of fact preclude consideration, at this juncture, of the defendants' claims of qualified immunity.  If the facts are as Burton alleges in his complaint, the defendants would not be entitled to immunity because any correctional officer would know that the law was clearly established that force may not be used against inmates

11

without reason.  The court therefore concludes that the defendants Wheeler, Jones, Burnham, Fenn, Baker, Burks, and McDonald's motion for summary judgment is due be denied.

   **C.  Defendant Allen and Giles**.  The plaintiff alleges that the Commissioner and Warden Giles are liable because they failed to take action after Burton reported that he had been assaulted by correctional officers.  Supervisory personnel cannot be held liable under § 1983 for the actions of their subordinates under a theory of respondeat superior.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).  However, liability may be imposed if the plaintiff shows that the defendant either personally participated in the alleged constitutional violation or instigated or adopted a policy that violated the plaintiff's constitutional rights.  *See Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1192 (11th Cir. 1994), *abrogated on other grounds Hope v. Pelzer*, 536 U.S. 730 (2002).

> [Supervisory] liability under  section 1983 must be based on something more than a theory of respondeat superior.  Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation.  The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.  *Cross v. Alabama Dep't. of Mental Health & Mental Retardation*, 49 F.3d 1490, 1508 (11th Cir. 1995) (quoting  *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir. 1990)); *accord Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992) ([A] supervisor may be held liable under  section 1983 if the supervisor had personal involvement in the constitutional deprivation or if a sufficient causal connection exists between the supervisors conduct and the constitutional violation.).

*Dolihite v. Maughon*,  74 F.3d 1027, 1052 (11th Cir. 1996).

   Burton does not assert that either Allen or Giles knew about the officers' intent to

assault him, nor does he allege that either defendant had a policy of allowing guards to assault inmates.  Rather, Burton alleges that the Commissioner and the Warden should have taken action after Burton reported the assault.  Burton does not contend, nor does he present any evidence to suggest, that either defendant knew or should have known that he was going to be attacked by the correctional officers.  He contends that because beatings by guards have occurred with regularity over the years,[10] these defendants should have anticipated the assault against Burton or perhaps, should have disciplined the officers as soon as Burton reported the assault.  This failure to anticipate or discipline is insufficient to tie the Commissioner or Warden to the assault against Burton.  Thus, Burton has failed to establish that either Allen or Giles acted with deliberate indifference to his safety by allowing him to be guarded by these correctional officers.  Accordingly, the motion for summary judgment with respect to Burton's claims against Commissioner Allen and Warden Giles is due be granted.

   **D.  Defendant Roan**.  The plaintiff alleges that defendant Roan "threatened to lock Plaintiff in segregation if [he] wrote any more letters to [state officials]." (Compl. at 4, ¶ 12).  Defendant Roan admits that he told Burton he could not use the law library typewriter for personal letters.  "I **did not** tell him that he could not write anyone, but that he could not use the typewriter for non-legal work and that he would receive disciplinary action if he did it again."  (Defs' Special Report, Aff. Thomas Roan, doc. # 9) (emphasis in original).  In

---

   [10]  The plaintiff's unsworn general allegations about a pattern of beatings by guards is insufficient to bring Burton's claims within the ambit of the type of preexisting, substantial risk of harm situations sufficient to put an official on notice of the need to alleviate the condition.  *See Marsh v. Butler County*, 268 F.3d 1014 (11th Cir. 2001).

response to the defendant's motion for summary judgment, the plaintiff alleges that "[t]he affidavit of defendant Thomas Roan is directly contrary with and in conflict with the sworn allegations of this Plaintiff's complaint." (Pl's Objection to Defs' Mot. at 18, ¶ 17.) This is simply insufficient to preclude summary judgment. The plaintiff alleges no facts and makes no argument in response to defendant Roan's motion for summary judgment. He does not point the court with any evidence, nor does his brief contain a discussion of any legal authority that would support his allegation that Roan's act of threatening him rises to the level of a constitutional violation. Perhaps more importantly, he does not address the defendant's argument that his claim is unsupported by the evidence. The burden is on the parties to formulate arguments and grounds alleged in the complaint but not relied upon in responding to a motion for summary judgment are deemed abandoned. *See Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994). Accordingly, the court concludes that the defendant Roan's motion for summary judgment on this claim is due to be granted.

## CONCLUSION

Accordingly, it is the Recommendation of the Magistrate Judge as follows:

1.     That defendants Allen, Giles, Thomas, Carter, Cynthia Wheeler and Roan's motion for summary judgment be GRANTED and that these defendants be dismissed as defendants in this action.

2.     That defendants Moses, Gloria Wheeler, Jones, Burnham, Fenn, Baker,

14

McDonald and Burks' motion for summary judgment be DENIED, and that the plaintiff's claims against these defendants be set for a jury trial.

3.      That the parties shall file any objections to the said Recommendation on or before **June 25, 2006.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 12th day of June, 2006.


_____/s/Charles S. Coody_____
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE